IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Plaintiff, | § | |
| | § | Criminal No. 3:15-CR-106-D(1) |
| VS. | § | |
| | § | |
| JOSE VALENTIN | § | |
| VALENZUELA-MORENO, | § | |
| | § | |
| Defendant. | § | |

MEMORANDUM OPINION
AND ORDER

Defendant Jose Valentin Valenzuela-Moreno ("Valenzuela-Moreno")—who is charged with the offense of illegal reentry after removal from the United States—moves to compel production of grand jury transcripts.  The principal reason he seeks this relief is to obtain discovery that he maintains would enable him to challenge the applicability of the penalty provision of 8 U.S.C. § 1326(b)(2).  Concluding that Valenzuela-Moreno has failed to demonstrate with particularity that he has a compelling necessity for the grand jury transcripts, the court denies the motion.

I

Valenzuela-Moreno is charged in a one-count indictment with the offense of illegal reentry after removal from the United States, in violation of 8 U.S.C. § 1326(a).[1]  The

---

[1]Count One of the indictment charges:

Illegal Reentry After Removal from the United States
[Violation of 8 U.S.C. § 1326(a) and (b)(2)]

indictment refers twice to a "violation" of § 1326(b)(2), which provides for an enhanced

penalty of 20 years' imprisonment when a defendant convicted of violating § 1326(a) has

been previously convicted of "an aggravated felony." 8 U.S.C. § 1326(b)(2).[2] The statutory

maximum for a violation of § 1326(a), when no enhancement under § 1326(b) applies, is two

years.

After Valenzuela-Moreno was indicted and made his initial appearance, the

government produced discovery that consisted in part of Valenzuela-Moreno's "A-file,"

which totals in excess of 1,000 pages and includes judicial records, the legal significance of

which the parties dispute.  The government contends the records prove that Valenzuela-

---

> On or about March 4, 2015, in the Dallas Division of the Northern District of Texas, the defendant, Jose Valentin Valenzuela-Moreno, an alien, was found in the United States after having been deported and removed therefrom on or about October 20, 2013, without having received the express consent of the United States Attorney General or the Secretary of the Department of Homeland Security to reapply for admission since the time of the Defendant's previous deportation and removal.
> In violation of 8 U.S.C. § 1326(a) and (b)(2).

Indictment at 1 (bold font omitted; brackets in original).

[2]Section 1326(b)(2):

> Notwithstanding subsection (a) of this section, in the case of any alien described in such subsection . . . whose removal was subsequent to a conviction for commission of an aggravated felony, such alien shall be fined under such title, imprisoned not more than 20 years, or both[.]

Moreno has at least two prior felony convictions: a May 1995 federal conviction for alien smuggling, and a November 1997 Missouri conviction for trafficking/attempted trafficking in controlled substances.  Valenzuela-Moreno maintains that the A-file records make clear that he has never been convicted of a felony: they reflect that he has two misdemeanor convictions for aiding and abetting an illegal reentry, an arrest for drug trafficking (which was dismissed after he filed a motion to suppress), and an arrest for a DWI (which resulted in pretrial diversion).  He therefore contends that the discovery provided by the government discloses no basis for including § 1326(b)(2) in the indictment, because there is no evidence that he has been previously convicted of an aggravated felony.  Valenzuela-Moreno also cites a Fifth Circuit decision issued at the conclusion of his deportation proceedings that contains a review of his criminal record.  *See Valenzuela v. Holder*, 540 Fed. Appx. 270 (5th Cir. 2013) (per curiam).[3]

---

[3]In *Valenzuela* the Fifth Circuit stated:

> [Valenzuela-Moreno] was convicted in 1996 in the Western District of Texas of aiding and abetting an alien in violation of 8 U.S.C. § 1325 and 18 U.S.C. § 2(a), and was sentenced to sixty days in prison and five years of probation.  Later in 1996 he was arrested in Missouri and charged with possession and attempted trafficking of a controlled substance after the car he was driving was found to contain sixty to seventy pounds of marijuana; he was released on bond.  After he failed to appear at a scheduled hearing in September 1997, his bond was forfeited. [Valenzuela-Moreno] also was arrested in 2001 for driving under the influence in Texas; he was placed in a pretrial diversion program in 2003, and successfully served one year probation.

Valenzuela-Moreno moves to compel the government to produce grand jury transcripts from the proceedings that resulted in his indictment. He contends that, considering that none of the voluminous evidence establishes that he is subject to the penalty provision of § 1326(b)(2), there is a genuine question regarding why he has been charged under this section, and that production of the grand jury transcripts is necessary for an adequate defense. The government opposes the motion.

## II

"[T]he proper functioning of the grand jury system depends upon the secrecy of the grand jury proceedings." *United States v. Miramontez*, 995 F.2d 56, 59 (5th Cir. 1993). "After a grand jury returns an indictment, the federal judiciary plays a very limited role in reviewing the grand jury process." *United States v. Kern*, 2007 WL 4377839, at *1 (S.D. Tex. Dec. 12, 2007) (citing *United States v. Strouse*, 286 F.3d 767, 771 (5th Cir. 2002)). Fed. R. Crim. P. 6(e)(3)(E)(ii) "authorizes the court to disclose a grand jury matter 'at the request of a defendant who shows that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury.'" *United States v. Oliver*, 2008 WL 2511751, at *2-3 (N.D. Tex. June 23, 2008) (Fitzwater, C.J.) (quoting Rule 6(e)(3)(E)(ii)). "[A] court called upon to determine whether grand jury transcripts should be released necessarily is infused with substantial discretion." *Douglas Oil Co. v. Petrol Stops Nw.*, 441 U.S. 211, 223

---

*Valenzuela*, 540 Fed. Appx. at 271. With respect to Valenzuela-Moreno's arrest and charge in Missouri for possession and attempted trafficking of a controlled substance, the court noted that "[t]he Missouri charges were dismissed after he prevailed on a motion to suppress in Missouri state court in November 2008." *Id.* at 271 n.1.

(1979).  The party seeking disclosure of the grand jury materials bears the burden of showing

that a particularized need exists for the materials that outweighs the policy of secrecy.

*United States v. Madrid*, ___ Fed. Appx.___, 2015 WL 3875435, at *8 (5th Cir. June 24,

2015) (per curiam) (quoting *Miramontez*, 995 F.2d at 59).  "The party seeking disclosure

'must demonstrate that (1) the material he seeks is needed to avoid a possible injustice in

another judicial proceeding, (2) the need for disclosure is greater than the need for continued

secrecy, and (3) his request is structured to cover only material so needed.'"  *Id.*; *see also*

*Douglas Oil Co.*, 441 U.S. at 222.  "[A] district court may properly order release of grand

jury materials where a party demonstrates with particularity a 'compelling necessity' for the

materials."  *In re Grand Jury Testimony*, 832 F.2d 60, 62 (5th Cir. 1987) (quoting *United*

*States v. Procter & Gamble Co.*, 356 U.S. 677, 682 (1958) (explaining that the

"indispensable secrecy of grand jury proceedings . . . must not be broken except where there

is a compelling necessity.")).

III

The question presented by Valenzuela-Moreno's motion is whether he has met his

burden of demonstrating with particularity that he has a compelling necessity for the grand

jury transcripts.

A

Valenzuela-Moreno contends that he needs the grand jury transcripts to evaluate

whether there are grounds on which to seek dismissal of the indictment.  He posits that there

are three possible scenarios that could explain why he has been charged under the

§ 1326(b)(2) penalty provision, despite voluminous evidence to the contrary: first, the government sponsored false information to the grand jury concerning his criminal history; second, the government misstated the applicable law based on his criminal history; and third, the grand jury handed up an indictment charging him under § 1326(b)(2) without probable cause. Valenzuela-Moreno maintains that because he cannot assess these three possibilities without reviewing the grand jury transcripts, production of the transcripts is necessary for an adequate defense. He also asserts that, even if government misconduct is not to blame for the reference in the indictment to § 1326(b)(2), notice of the enhanced penalty is relied upon at rearraignment (i.e., entry of a guilty plea) and permits the court to impose an enhanced sentence.

The government opposes the motion. It maintains that the indictment does not charge Valenzuela-Moreno with violating § 1326(b)(2), and that he has not met his burden of producing credible evidence of a particularized, compelling need for the grand jury transcripts. The government contends that Valenzuela-Moreno has not identified a specific credible basis for speculating that government misconduct occurred during the grand jury proceedings; that he has erroneously concluded that the reference to § 1326(b)(2) in the "title" portion of Count One of the indictment means that he has been charged under § 1326(b)(2); and that he has not established a compelling need for the grand jury transcripts. The government posits that, even assuming that the transcripts reveal that the government presented erroneous evidence to the grand jury concerning Valenzuela-Moreno's criminal history, he cannot demonstrate sufficient prejudice to warrant dismissing the indictment

- 6 -

because § 1326(b)(2) is not an element of the offense charged in Count One of the indictment.

B

The court concludes that Valenzuela-Moreno has failed to meet his burden of demonstrating with particularity a compelling need for the grand jury transcripts.

1

Valenzuela-Moreno's argument that he needs the transcripts to determine whether the government engaged in misconduct is based on nothing more than mere speculation. "Rule 6(e) does not permit a fishing expedition at the expense of grand jury secrecy." *United States v. Price*, 582 Fed. Appx. 846, 850 (11th Cir. 2014) (per curiam); *see also United States v. Rockwell Int'l Corp.*, 173 F.3d 757, 760 (10th Cir. 1999) (per curiam) ("No grand jury testimony is to be released for the purpose of a fishing expedition or to satisfy an unsupported hope of revelation of useful information."). Thus "[t]he required showing of particularity and/or compelling necessity cannot be based on speculation." *United States v. Case*, 656 F.Supp.2d 603, 612 (S.D. Miss. 2009) (citing *United States v. Torres*, 901 F.2d 205, 233 (2d Cir. 1990) (explaining that a "review of grand jury minutes is rarely permitted without specific factual allegations of government misconduct"); *United States v. Edelson*, 581 F.2d 1290, 1291 (7th Cir. 1978) (holding that unsupported speculation is not enough to constitute particularized need for purpose of releasing grand jury transcripts under Rule 6(e))). Although Valenzuela-Moreno attaches emails as an exhibit to his reply indicating that an Assistant U.S. Attorney initially hesitated to prosecute Valenzuela-Moreno under § 1326,

these emails do not support the assertion that government misconduct occurred before the grand jury.  Further, of Valenzuela-Moreno's three possible explanations for the reference to § 1326(b)(2) in the indictment, only one involves possible government misconduct, and the government suggests an additional, innocent explanation in its response.  In fact, Valenzuela-Moreno has not proffered any specific allegations of government misconduct; instead, he speculates that misconduct could explain the inclusion of § 1326(b)(2) in the indictment, and he seeks to review the grand jury transcripts to uncover a basis for dismissing the indictment.  Rule 6(e)(3)(E)(ii) does not permit this kind of fishing expedition.

2

Nor has Valenzuela-Moreno demonstrated that he needs the grand jury transcripts to avoid a possible injustice in another judicial proceeding.  Valenzuela-Moreno argues that including § 1326(b)(2) in the indictment will result in injustice because "[n]otice of that increased penalty is relied upon at the rearraignment stage of a criminal case, allows for a court to impose an enhanced sentence, and so has a serious collateral effect."  D. Reply 2. He also contends that he is entitled to know whether the grand jury made findings of fact regarding his criminal history, so that he can move to strike the reference to § 1326(b)(2) from the indictment as prejudicial surplusage, and preserve the issue for further appellate review.  These arguments fail to demonstrate that Valenzuela-Moreno has a compelling necessity for the grand jury transcripts.  In fact, they appear to be based on a misconception of how § 1326(b)(2) functions as a penalty enhancement provision rather than as a statute that defines a separate crime.

In *Almendarez-Torres v. United States*, 523 U.S. 224 (1998), the Supreme Court considered whether § 1326(b)(2) defines a crime that is separate from that defined in § 1326(a) or simply authorizes an enhanced penalty, and, consequently, whether the § 1326(b)(2) enhancement must be charged in the indictment. *Id.* at 226. The Supreme Court held that the enhancement of § 1326(b)(2) is a sentencing factor, not a separate criminal offense, and need not be charged in the indictment. *Id.* at 235. Therefore, although Count One of the indictment twice refers to a "violation" of § 1326(b)(2), this appears to be nothing more than a means of advising Valenzuela-Moreno that, if he is convicted of violating § 1326(a), the government may (if not will) seek the enhanced penalty that § 1326(b)(2) provides. Count One does not actually charge Valenzuela-Moreno with violating § 1326(b)(2) because it is a penalty provision that cannot be violated.

Moreover, because the Supreme Court has concluded that § 1326(b)(2) is merely a penalty provision and need not be alleged in the indictment or submitted to the jury at the guilt or innocence stage, the references to § 1326(b)(2) in Valenzuela-Moreno's indictment are unnecessary. To the extent Valenzuela-Moreno can demonstrate that these references are prejudicial, the court can cure any such prejudice by striking them as surplusage. If Valenzuela-Moreno decides to go to trial, the court at his request can strike the references to § 1326(b)(2) as surplusage. *See, e.g.*, *United States v. Arevalo*, 2011 WL 5325538, at *2 (W.D. Va. Nov. 3, 2011) (striking reference to aggravated felony in indictment because it was unnecessary and prejudicial). Under Rule 7(d), "[t]he court can treat as surplusage 'the allegation of additional facts beyond those which comprise the elements of the crime[.]'"

- 9 -

*United States v. Smallwood*, 2011 WL 2784434, at *10 (N.D. Tex. July 15, 2011) (Fitzwater, C.J.) (quoting *United States v. Valencia*, 600 F.3d 389, 432 (5th Cir. 2010)).  "The purpose of [Rule] 7(d) is to protect the defendant against prejudicial allegations of irrelevant or immaterial facts." *Id.* (quoting 1 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure*, § 128, at 641 (4th ed. 2008)).  "The court can strike as surplusage any irrelevant language that is unduly inflammatory and prejudicial in that it 'serve[s] only to inflame the jury, confuse the issues, and blur the elements necessary for conviction[.]'"  *Id.* (quoting *United States v. Bullock*, 451 F.2d 884, 888 (5th Cir. 1971)).  It is therefore apparent that any prejudice or injustice resulting from including references to § 1326(b)(2) in Count One can be avoided without requiring that grand jury transcripts be produced.

If Valenzuela-Moreno pleads guilty, he can enter a plea based on the essential elements of a violation of § 1326(a), while preserving the right to challenge the applicability of § 1326(b)(2) during the sentencing phase.  Although in taking his plea the court will warn him of the greater possible penalties provided in § 1326(b)(2), it will not sentence him in excess of the lower penalties of § 1326(a) (or of an applicable provision of § 1326(b)) if they govern his sentence.  By pleading guilty to a violation of § 1326(a), Valenzuela-Moreno will not be admitting that the penalty provisions of § 1326(b)(2) apply.  And even in the context of a guilty plea, the court can consider striking the reference to § 1326(b)(2) in Count One.  *See United States v. Montoya-Echeverria*, 991 F.Supp.2d 1048, 1051 (N.D. Iowa 2013) (striking reference in indictment to § 1326(b)(2) "[t]o ensure that the defendant's plea of guilty to the cha[r]ged offense does not operate as an admission of facts pertaining to the

- 10 -

sentencing enhancement").

3

The court therefore concludes that Valenzuela-Moreno has failed to demonstrate with particularity that he has a compelling necessity for the grand jury transcripts. Accordingly, the motion to compel production of grand jury transcripts is denied.

IV

In his reply, Valenzuela-Moreno requests for the first time that the court at least conduct an *in camera* review of the grand jury transcripts and disclose any part that involves a discussion of his criminal history, and, if there is no such discussion, enter that fact on the record and strike the reference to § 1326(b)(2) as prejudicial surplusage. Even if the court considered new arguments first raised in a reply brief, which it does not,[4] Valenzuela-Moreno's failure to demonstrate with particularity that he has a compelling necessity for the grand jury transcripts also means that he has not demonstrated that the court should order disclosure in this limited, alternative form. Accordingly, without prejudice to Valenzuela-Moreno's moving to strike the reference to § 1326(b)(2) as prejudicial surplusage, and without excusing the government from any disclosure obligations arising under such authorities as the Jencks Act, 18 U.S.C. § 3500, *Brady v. Maryland*, 373 U.S. 83 (1963), and

---

[4]*See, e.g., Jacobs v. Tapscott*, 2006 WL 2728827, at *7 (N.D. Tex. Sept. 25, 2006) (Fitzwater, J.) ("[T]he court will not consider an argument raised for the first time in a reply brief.") (citing *Senior Unsecured Creditors' Comm. of First RepublicBank Corp. v. FDIC*, 749 F. Supp. 758, 772 (N.D. Tex. 1990) (Fitzwater, J.)), *aff'd*, 277 Fed. Appx. 483 (5th Cir. 2008).

*Giglio v. United States*, 405 U.S. 150 (1972), the court denies Valenzuela-Moreno's request.

\*   \*   \*

For the reasons explained, the court denies defendant's motion to compel production of the grand jury transcripts.

**SO ORDERED**.

August 11, 2015.

_____
SIDNEY A. FITZWATER
UNITED STATES DISTRICT JUDGE

- 12 -